[No. 4,091.]

## WM. McGARRAHAN v. THE NEW IDRIA MINING COMPANY.

PATENT FOR MEXICAN GRANT.—Both the officers of the government and the grantee, as well as those in privity with him, are bound by the recital of *facts* contained in the patent for a Mexican Grant.

POWER TO ISSUE PATENTS AND SELL PUBLIC LAND.—Neither the President nor any officer of the government has any power to dispose of the public domain, or to sign or cause the seal of the United States to be affixed to a patent, except such as is conferred by a statute of the United States.

WHEN PATENT MAY ISSUE.—A patent to a Mexican grant of land cannot be issued until after a final confirmation.

WHAT RECITALS IN PATENT ARE NOT CONCLUSIVE.—While the recitals of fact contained in a patent are binding on all concerned, an opinion of the executive officers as to matters of law, indicated either by the act of issuing the patent, or by the recitals contained therein, is not conclusive.

PATENT ISSUED WITHOUT AUTHORITY IS VOID.—A patent for a Mexican grant of land, issued while an appeal to the Supreme Court from the decree of the District Court confirming the same is pending, is void.

VACATING AN ORDER GRANTING AN APPEAL.—When an appeal has been granted by a District Court of the United States to the Supreme Court, the jurisdiction of the Supreme Court attaches, and the District Court has no power to vacate the order granting the appeal.

APPEAL from the District Court, Twentieth Judicial District, County of Santa Clara.

The case was thus: On the 9th day of February, 1853, Vicente P. Gomez, as claimant, filed a petition with the Commissioners to settle private land claims in California, asking that the Board confirm to him a tract of land of four square leagues, called "Panoche Grande," situated in the then county of San Joaquin. He founded his claim upon an alleged grant made to him in the year 1844, by Manuel Micheltorena, then Governor of Upper California. On the 6th day of March, 1855, the Board of Land Commissioners rejected the claim. Gomez appealed to the District Court for the Southern District of California, and that tribunal, on the 5th day of June, 1857, reversed the decision of the Board of Land Commissioners, and confirmed the claim, but the decree was not signed by the Judge and entered until the 5th day of February, 1858.

On the 25th day of August, 1862, the District Court of the United States made an order in the cause allowing an appeal to the Supreme Court of the United States. At the December Term following, the District Court made an order vacating and setting aside the order of August 25, allowing an appeal, and denying the motion of the District Attorney for leave to take an appeal. The rancho was surveyed by the Surveyor-General, under the Act of Congress approved June 2d, 1862, and a plat with a certificate of the survey, authenticated by the Surveyor-General of Public Lands in California, on the 11th day of September, 1862, was presented to the Commissioner of the General Land Office, and a patent was demanded. The Secretary of the Interior, on the 29th of December, 1862, rendered a decision on the application, in which he held that the decree of the District Court had become final, and that a patent should issue. The foregoing facts were recited in the recorded patent hereinafter mentioned.

On the 4th day of March, 1863, the matter of the issuing of a patent again came before the Secretary of the Interior, and he again held that a patent should issue. On the 14th day of March, 1863, there was recorded in volume four of records kept in the General Land Office at Washington, for the recording of patents of the United States, issued for

California confirmed Mexican grants, a patent in due form, dated March, 14, 1863, and signed, "Abraham Lincoln, by W. O. Stoddard, Secretary, acting recorder of the General Land Office." On the 25th day of July, 1870, there was written across the face of said record the following:

"DEPARTMENT OF THE INTERIOR, ⎫
General Land Office, July 25, 1870. ⎬

"The record from pages 312 to 321 inclusive, was made in accordance with the custom at the time, in anticipation of the original being submitted to the officers whose duty it is, under the law, to sign land patents, but an order, dated March 13, 1863, having been received from the Acting Secretary of the Interior, to suspend the execution and delivery of a patent, under the decision of the department of the 4th of March, 1863, until further advised in the case by the Secretary, the form of patent which had been prepared, and from which the aforesaid record was made, was not submitted for signature, and has never been dated, signed nor delivered.

"JOS. S. WILSON, Commissioner.
"J. N. GRANGER, Recorder."

On the 22d day of December, 1857, Gomez, the grantee, executed to the plaintiff, McGarrahan, a deed, conveying to him all his said Gomez's right, title, and interest in the said rancho "Panoche Grande." On the 11th day of July, 1870, and fourteen days before said entry was made across the face of the record, the plaintiff demanded an exemplification of said record, but it was refused. On the 24th of March, 1873, the Commissioner of the General Land Office issued an exemplification of said record, but, in his certificate thereto annexed, made the following statement: "And I further certify that the original instrument set forth in the above named pages of said volume four, was never executed by the President of the United States, nor delivered to the grantee, and that said original instrument is now on file in this office, but neither it, nor the copy thereof in said volume four, is regarded or treated as a part of the office records of the General Land Office."

This was an action of ejectment to recover a portion of said rancho containing four hundred and eighty acres, known as the New Idria Quicksilver Mine. The rancho, at the time of the commencement of this action, was in the counties of Fresno and Monterey.

The defendant had judgment in the Court below, and the plaintiff appealed.

*B. S. Brooks, J. P. Hoge, Sol. A. Sharp,* and *W. H. Patterson,* for the Appellant, argued that the record kept by the government of its own land grant was the original, and cited *McConnell* v. *Wilcox,* 15 Scam. 344; *U. S.* v. *Sutter,* 21 How. 175; *Peralta* v. *The U. S.,* 3 Wal. 440; *Henrich* v. *Barton,* 16 Wal. 166; and that it was the affixing of the seal which passed the title, and not the signature, and cited *Cunningham* v. *Browning,* 1 Bland. 299; *Phillips Lessee* v. *Irwin,* 1 Tenn. (Overton) 235; *Harris* v. *Doe,* 4 Black, 157, and *Bogardus* v. *Trinity Church,* 4 Sand. Ch. 633.

*S. M. Wilson,* for the Respondent, argued that the alleged patent was void on its face, because it showed that the officers had no power to issue one, and cited *McGarrahan* v. *Maxwell,* 28 Cal. 89; *The United States* v. *Gomez,* 3 Wal. 767; *Cameron* v. *Roberts,* 3 Wheat. 591; *McMicken* v. *Perrin,* 18 How. 611; *Helm* v. *Boone,* 6 J. J. Marsh, 366; Brightly's Dig. p. 113, Sec. 46, and *Hills* v. *Sherwood,* 33 Cal. 479.

By the Court, McKINSTRY J.:

For the purpose of this decision only, we shall consider the record in the volume in the General Land Office at Washington, kept for the recording of patents of the United States issued upon California confirmed Mexican grants, as constituting the original patent.

The patent is evidence of the series of proceedings recited in it; and as the deed of the United States took effect by relation as of the date of the presentation of the petition for confirmation of the grant to the Board of Land Commissioners. (*Leese* v. *Clark,* 18 Cal. 535.) Indeed, it is only by virtue of this application of the doctrine of relation

that the plaintiff can hope to recover, since his deed from Gomez, the original grantee, only purports to convey "the right, title and interest" of Gomez at the date of the conveyance, which preceded several years that of the alleged patent. (*Gee* v. *Moore*, 14 Cal. 472; *Kimball* v. *Semple*, 25 Cal. 440; *Morrison* v. *Wilson*, 30 Cal. 344.) The patent, as we have seen, is not only the deed of the United States—it is evidence of the proceedings recited in it, and is a solemn record of the government, of its action and judgment, with respect to the title of the claimant. As such, it imports absolute verity. (*Teschemacher* v. *Thompson*, 18 Cal. 11.) It follows that both the officers of the government and the grantee, as well as those in privity with him, are bound by the recital of facts contained in the patent.

Neither the President, however, nor any officer has other power to dispose of the public domain, or to sign, or cause the seal of the Land Office to be affixed to patents, than such as is conferred by statutes of the United States. (*Parker* v. *Duff*, 47 Cal. 554.)

Under the Act of Congress of 1851, "To ascertain and settle private land claims in California," a patent can only issue after the final confirmation of a Mexican grant. While therefore the recitals of fact are binding on all concerned, an opinion of the executive officers in respect to matters of law, as indicated either by the ultimate act of issuing the patent or by recitals inserted in that instrument, is not— and from the nature of the powers and duties of such officers—cannot be conclusive. (*Foscalina* v. *Doyle*, 47 Cal. 437.)

It appears from the alleged patent that on the 25th of August, 1862, an order was made in the District Court allowing an appeal to the Supreme Court of the United States in the case *The United States* v. *Gomez*; and that at the December Term, 1862, the District Court made an order purporting to set aside the order of the 25th August.

The order of the 25th day of August, 1862, was valid and effectual to transfer the cause to the Supreme Court of the United States for final disposition, subject only to the appeal being dismissed for want of prosecution, without prej-

udice to a new appeal within five years. after the decree of the District Court. (*United States* v. *Gomez,* 3 Wall. 673; *McGarrahan* v. *Maxwell,* 28 Cal. 89.) It does not appear in the patent, nor in the findings of the Court below, that any disposition has been made of the appeal of the 25th of August by the Supreme Court of the United States. On the appeal being granted by the District Court, the jurisdiction of the Supreme Court attached, and the appeal could be dismissed only on application to the Supreme Court. The District Court could not, just before the expiration of the five years, set aside its order granting an appeal, and thus deprive a party of a sacred right guaranteed by the statute. An appeal constitutes a bar to the execution of the judgment of the inferior Court. (*United States* v. *Pacheco,* 20 How. 263.) Its effect is to suspend all proceedings in the Court below. (*Thornton* v. *Mahoney,* 24 Cal. 569; *McGarrahan* v. *Maxwell, supra.*) It must be effectual to prohibit any action of the District Court setting aside an order which has already operated to transfer the cause to the Appellate tribunal.

The claim to the rancho "Panoche Grande" was not finally confirmed, therefore, when the alleged patent was issued, and the same is void.

Judgment affirmed.

Mr. Chief Justice WALLACE, being disqualified, did not sit in this cause.